CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 18, 2025
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ELIZABETH S. MILLIGAN, ) | |
| Administrator of the Estate of ) | |
| Janet S. St. John, deceased, ) | Civil Action No. 3:24-cv-00061 |
|     Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION & ORDER |
| ) | |
| CEDARS LEASING CO., LLC, ) | |
| d/b/a CEDARS HEALTHCARE CENTER, ) | By:   Joel C. Hoppe |
|     Defendant. ) | United States Magistrate Judge |

In August 2024, Plaintiff Elizabeth S. Milligan, Administrator of the Estate of Janet St. John ("Ms. St. John"), filed this diversity action against Defendant Cedars Leasing Co., LLC, d/b/a Cedars Healthcare Center ("Cedars"), alleging that Cedars repeatedly failed to implement certain safety measures designed to protect Ms. St. John from a known risk of physical injury during nursing-care encounters. *See generally* Compl. ¶¶ 11, 18–39, 44–48, 68, ECF No. 1. On September 17, 2022, Ms. St. John fell out of bed and landed on the floor after the Cedars nurse who was there to bathe her "walked away from Ms. St. John" to gather supplies. *Id.* ¶ 46; *see id.* ¶¶ 44–48. Ms. St. John suffered a head injury and fractured femur that required prompt surgical intervention. *See id.* ¶¶ 49–55. She died six days later. *See id.* ¶¶ 56–57. Her "death certificate states her cause of death was 'blunt force trauma to the head and right upper leg.'" *Id.* ¶ 58. Milligan's complaint asserts three causes of action against Cedars: Negligence, *id.* ¶¶ 59–64 (Count I); Willful or Wanton Conduct, *id.* ¶¶ 65–70 (Count II); and Wrongful Death under Virginia Code § 8.01-50, *id.* ¶¶ 71–73 (Count III). Milligan seeks compensatory damages as well as punitive damages under Virginia Code § 8.01-52(5), *see id.* ¶ 73, for Cedars's pattern of "willful and wanton conduct" that allegedly led to Ms. St. John's death, *see id.* ¶¶ 65–70 (Count II).

Cedars moved to dismiss parts of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike portions of the Complaint under Rule 12(f). Def.'s Mot., ECF No. 7; *see generally* Br. in Supp. 3–8, ECF No. 8. The matter has been fully briefed, ECF Nos. 8, 15, 17, and can be resolved without a hearing, Fed. R. Civ. P. 78(b), W.D. Va. Civ. R. 11(b). For the reasons discussed below, the motion is DENIED.

## I. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard is not akin to a 'probability requirement,'" but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a motion to dismiss, the court must accept as true the well-pled factual allegations and draw all reasonable inferences flowing from the well-pled facts in favor of the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Meanwhile, a motion to strike under Rule 12(f) challenges the presence of "any redundant, immaterial, impertinent, or scandalous matter" in a pleading. *See* Fed. R. Civ. P. 12(f)(2). "'Redundant' matter consists of allegations that constitute a needless repetition of other averments in the pleadings." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 ("5C Wright & Miller") (4th ed. 2024). "'Immaterial matter is that which has no essential or important relationship to the claim for relief,' and 'impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Lancaster v.*

*Michael Stapleton Assocs., Ltd.*, No. 5:23-cv-63, 2024 WL 1977175, at *3 (W.D. Va. May 3, 2024) (quoting 5C Wright & Miller § 1382 (3d ed., Apr. 2022 update)).

Rule 12(f) motions "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted). Thus, Rule 12(f)(2) "imposes a sizable burden on the movant." *United States v. Google, LLC*, 692 F. Supp. 3d 583, 592 (E.D. Va. 2023) (quotation marks omitted). However, granting a motion to strike is "proper where the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Lancaster*, 2024 WL 1977175, at *3 (internal quotation marks omitted).

## I. Background[1] & Procedural History

Ms. St. John, "a quadriplegic secondary to multiple sclerosis," was admitted to Cedars on December 1, 2004. Compl. ¶ 18. Cedars's "plan of care" for her stated that she "has ADL/physical functioning deficit related to: Self-care impairment, Mobility impairment. Has a diagnosis of multiple sclerosis, resulting quadriplegia from MS progression and dependent on staff for all aspects of care." *Id.* ¶ 20. Cedars "knew that [she] was completely dependent on facility staff for moving, bathing, toileting, and transferring to and from her bed based on [her] medical history that included quadriplegia secondary to multiple sclerosis, among other conditions and limitations." *Id.* ¶ 19. Cedars specifically "knew that Ms. St. John required two-

---

[1] The facts set out below come from Milligan's complaint, ECF No. 1. All well-pleaded factual allegations and reasonable inferences drawn therefrom are presented as true and in the light most favorable to Milligan as the nonmoving party. *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).

person assistance for all transfers and bathing assistance to protect her from injury and falls." *Id.* ¶ 23.

Ms. St. John suffered injuries on two separate occasions while Cedars's staff was providing care. *Id.* ¶¶ 24–25, 27–31, 44–58. The first injury occurred in April 2022 when Ms. St. John's "right lower leg hit the bar of a Hoyer lift during transfer."[2] *Id.* ¶¶ 27–31. Only one staff member was present for the Hoyer transfer. *Id.* ¶¶ 27–28. Two days later, Ms. St. John was sent to the emergency room and diagnosed with a right tibia and fibula fracture. *Id.* ¶¶ 30–31. The Certified Nursing Assistant ("CNA") initially documented that the Hoyer transfer was performed by one staff member. *Id.* ¶ 28. However, the Virginia Department of Health ("VDH") investigated this injury after Ms. St. John's death and "the CNA later stated that two staff members were present." *Id.* ¶¶ 27–29, 32. VDH's investigation "found: 'Based on staff interview, clinical record review, facility document review and complaint investigation, the facility staff failed . . . to provide a safe transfer with a mechanical lift resulting in a leg fracture[.]'" *Id.* ¶ 32 (alterations in original). VDH later issued Cedars a citation for this failure. *Id.* ¶¶ 27, 33.

The second injury occurred on September 17, 2022, when Ms. St. John was receiving a bed-bath from a CNA. *Id.* ¶ 44. Only one CNA was present for the bath. *Id.* ¶ 45. The CNA turned Ms. St. John on her side and walked away to get materials for the bath, leaving her unattended. *Id.* ¶ 46. "According to VDH['s] and [Cedars's] records, Ms. St. John stated that she was too close to the edge of the bed and that she was about to fall." *Id.* ¶ 47. Ms. St. John fell off the bed before the CNA returned, and she "suffered a laceration to her right scalp and a displaced right proximal shaft femur fracture." *Id.* ¶¶ 47–49.

---

[2] "A Hoyer lift is a mechanical lift that assists with transferring a patient who is immobile." *Id.* ¶ 25.

4

The next day, on September 18, Ms. St John underwent surgery for her injuries during which she "suffered acute blood loss." *Id.* ¶¶ 54–55. "Ms. St. John's condition deteriorated" after surgery. *Id.* ¶ 55. On September 21, she was transferred from the hospital to hospice care "for 'comfort measures only.'" *Id.* ¶ 56.

Ms. St. John died on September 23. *Id.* ¶ 57. Her death certificate lists her cause of death as "blunt force trauma to [her] head and right upper leg." *Id.* ¶ 58. VDH's investigation of the September 17 bed-bath incident concluded that Cedars's "staff failed . . . to prevent a fall during provision of personal care resulting in a femur fracture and scalp laceration." *Id.* ¶ 51 (alteration in original). VDH issued Cedars a separate citation for this failure. *Id.* ¶ 52.

Milligan's complaint alleges that it was common for Cedars not to provide two-person assistance. *Id.* ¶¶ 34–39. Between May 2022 and July 2022, Cedars's records show that "Ms. St. John was provided with less than the required minimum of two-person assistance" when receiving bed-care for the following shifts:

- May: 68 shifts of bed care;
- June: 79 shifts of bed care; and
- July: 63 shifts of bed care.

*Id.* ¶¶ 35, 36, 38. In June 2022 and July 2022, "Ms. St. John was transferred . . . without the assistance of at least two staff members" during the following transfers:

- June: 9 transfers; and
- July: 63 transfers.

*Id.* ¶¶ 37, 39.

Milligan also alleges that Cedars conducted staff interviews to retroactively increase the recorded number of staff that were reportedly present for various tasks to obtain higher

5

reimbursement rates from insurance. *Id.* ¶ 40. Milligan's complaint specifically contends that the original records for April 28, 2022, and July 25, 2022, noted that only one staff person was present, but that Cedars conducted further staff interviews to "up cod[e]" and adjusted the number of staff upward in the records. *Id.* ¶¶ 40–41.

\*

Milligan's complaint contains three counts: Negligence (Count I); Willful or Wanton Conduct (Count II); and Wrongful Death (Count III). *Id.* Milligan asserts that Cedars "owed Ms. St. John the duty of care set forth in Va. Code § 8.01-581.20," *id.* ¶ 9, and that certain acts and omissions constituting breaches of this duty caused Ms. St. John's head injury and femur fracture that resulted in her death. *See id.* ¶¶ 59–63. Milligan contends that Cedars breached the duty of care by failing to exercise reasonable care, *id.* ¶ 62(a), failing to provide two-person assistance when transferring or bathing Ms. St. John, *id.* ¶ 62(b), and by failing to comply with Medicare regulations that dictate requirements for Skilled Nursing Facilities, *id.* ¶ 62(c)–(e).

Cedars moves to dismiss the complaint in part for failure to state a claim under Rule 12(b)(6) and to strike certain "scandalous" and "immaterial" allegations under Rule 12(f). Def.'s Mot. 1. Cedars first argues that Milligan's purported "negligence per se" claim should be dismissed and accordingly, "any references to Medicare regulations" should be stricken from the complaint.[3] Br. in Supp. 3–5 (citing Compl. ¶¶ 14–17, 61, 62(c)–(e), 67(c)–(f)). Cedars next argues that "[a]ny allegations of negligence . . . prior to September 17, 2022" should be dismissed and/or stricken because they are "not causally related to Ms. St. John's death." *Id.* at

---

[3] Virginia recognizes a free-standing cause of action called negligence per se. *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 872 (Va. 2011). To prevail on a negligence per se claim, the plaintiff must ultimately prove that (1) "the defendant violated a statute enacted for public safety"; (2) the plaintiff "belong[ed] to the class of persons for whose benefit the statute was enacted"; and (3) "the statutory violation [was] a proximate cause of plaintiff's injury." *Id.* (citation omitted).

5–6. It specifically asks the Court to "[d]ismiss this cause of action and strike any references to improper use of a Hoyer lift and Plaintiff's alleged injury on April 22, 2022." *Id.* at 6 (citing Compl. ¶¶ 16–43).

Cedars finally asks the Court to strike allegations regarding Medicare regulations and VDH's investigations and findings.[4] *Id.* at 6–7 (citing Fed. R. Civ. P. 12(f)). Cedars argues that allegations regarding Medicare regulations should be stricken because they "do not relate" to Milligan's common law negligence claim in Count I. *Id.* at 6–8. Cedars asserts two separate arguments regarding the VDH investigation. *Id.* at 7. First, Cedars argues that allegations about a VDH investigation should be stricken because they do "not impact the alleged negligence since, per Plaintiff's allegations, the investigation occurred after Ms. St. John's death and thus after the tort occurred." *Id.* Second, Cedars argues that "[a]ny findings of said investigation would further constitute hearsay and invade the province of the jury." *Id.*

In opposition to Cedars's motion, Milligan asserts that she does not bring a claim for negligence per se. Milligan's Opp'n 5–7. Her complaint alleges three causes of action: Negligence (Count I); Willful or Wanton Conduct (Count II); and Wrongful Death (Count III). Compl. ¶¶ 59–73. Milligan agrees that federal Medicare regulations "do not *in and of* themselves constitute the standard of care under Va. Code § 8.01-581.20," but argues that "their violation is important *evidence of* violation of the standard of care." *Id.* at 5. She asserts that the allegations about Medicare regulations "go directly to [Cedars's] knowledge of what is required and its willful disregard of those requirements." *Id.* at 6. Milligan concedes that Ms. St. John's April

---

[4] Cedars asks the Court to "dismiss Plaintiff's allegations regarding Medicare regulations, regulatory investigations of defendant, and regulatory findings against Defendant." *Id.* at 7. However, Cedars titles the section "Motion to Strike Allegations Regarding Medicare Regulations, Regulatory Investigations of Defendant, and Regulatory Findings Against Defendant" and relies entirely on Rule 12(f) to support its request. *Id.* at 6. Therefore, the Court interprets this as an argument to strike, not to dismiss, the "allegations" at issue. *Id.* at 6–7 (citing Fed. R. Civ. P. 12(f)).

7

2022 injury during the Hoyer transfer is not the basis of her wrongful death claim; however, Milligan argues that this injury is relevant background to "show[] the repeated, willful pattern of failing to provide Ms. St. John with the care that [Cedars] knew was required." *Id.* at 5–6. Finally, Milligan asserts that the allegations about VDH's investigation and findings "make[] it easier for the Court to determine that the Plaintiff's allegations are plausible" and are relevant for punitive damages. *Id.* at 6–7.

In reply, Cedars argues that Milligan "conflates two fact patterns which are legally separate and distinct from one another"—i.e., the April 2022 Hoyer transfer injury and the September 2022 bed-bath injury. Def.'s Reply 2. Cedars asserts that it is "improper" for Milligan to use "her claim for wrongful death punitive damages . . . as grounds to present allegations of misconduct which are unrelated to" events that led to Ms. St. John's death. *Id.*; *see also id.* at 3 ("Plaintiff cannot utilize her claim that Defendant's (unidentified) employee(s) acted willfully or wantonly in failing to prevent her from falling during a bed-bath to open the door to present allegations of negligence which are time barred and have no bearing on the actions/inactions which purportedly cause Ms. St. John's death."). Cedars contends that Milligan's "opposition fails to provide any basis as to why her allegations regarding Medicare regulations or the V[DH] Investigation . . . are material or relevant to her wrongful death action." *Id.* at 3–4.

Cedars does not move to dismiss any of the actual counts in the complaint. *See generally id.*; Def.'s Mot. 1. Cedars moves to dismiss an un-asserted negligence per se claim, but does not move to dismiss the claims for negligence (Count I) and wrongful death (Count III). *See* Def.'s Mot. 1; *see also* Br. in Supp. 3–8. Cedars explains that it has not moved to dismiss Milligan's claim for willful or wanton conduct (Count II), because "a willful and wanton claim for punitive damages 'is not a cause of action subject to dismissal under Rule 12(b)(6).'" Def.'s Reply 1

8

(quoting *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014)).

## III. Analysis

### A. Milligan does not allege negligence per se, but the Medicare regulations are relevant to the standard of care under Virginia law.

Cedars argues that the Court should dismiss Milligan's (purported) negligence per se claim and, accordingly, strike any references to Medicare regulations, because: (1) the federal regulations "do not establish the standard of care by which healthcare providers are to be judged and do not create a private cause of action," Br. in Supp. 3; (2) negligence per se is not a recognized cause of action in Virginia medical malpractice actions, *id.*; and (3) Milligan does not allege that Ms. St. John was a member of the class protected by the Medicare statute, *see id.* at 4.

The Complaint does not expressly identify a claim for negligence per se, *see generally* Compl., and in her brief in opposition, Milligan denies bringing that claim, *see* Milligan's Opp'n 5–7. As the plaintiff, Milligan "is the master of [her] complaint and determines the claims to bring," or not to bring, in this case. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) (cleaned up). Cedars's motion to dismiss a negligence per se claim must be denied because Milligan has not brought a claim for negligence per se. *See, e.g.*, *Monk v. Gulick*, No. 3:20-cv-518, 2021 WL 1265205, at *4 (E.D. Va. Apr. 6, 2021) (denying defendants' motion to dismiss a purported negligence claim as moot where plaintiff argued that "he did *not* bring a negligence claim against the defendants" and the court "fel[t] obligated to take him at his word" because only plaintiff "knows what claims he intended to bring"); *Hendricks v. Rios*, No. 2:20-cv-244, 2020 WL 5077737, at *2 n.2 (E.D. Va. Aug. 27, 2020) (noting that the court "need not address" defendant's argument that plaintiff's complaint failed to state a claim for excessive force, because plaintiff "did not bring a claim for excessive force").

Cedars also contends that the Medicare regulations are immaterial and impertinent and thus should be stricken from the complaint because they cannot be used to establish negligence per se. Br. in Supp. 4–5. Cedars is correct that violations of the regulations are not sufficient, or in some cases admissible, to prove negligence per se. *Albrecht v. Balt. & Ohio R.R. Co.*, 808 F.2d 329, 332–33 (4th Cir. 1987) (OSHA regulations); *Marslender v. Va. Elec. & Power Co.*, No. L90-2563, 1995 WL 17049052, at *2 & n.2 (Va. Cir. Ct. July 31, 1995) (excluding OSHA regulations, adopted in Virginia, as evidence of negligence per se, but allowing the regulations into evidence as relevant to the duty of care). However, as discussed, Milligan's complaint does not assert negligence per se. *See generally* Compl.; Milligan's Opp'n 5–7. This portion of Cedars's argument urging the Court to strike the Medicare regulations is thus based entirely on a claim that Milligan did not bring. It is Cedars's "sizable" burden to show that the Medicare regulations have no essential or important relationship to Milligan's actual claim(s). *Google*, 692 F. Supp. 3d at 592. It has not met this high burden. *Cf. Jones v. City of Danville*, No. 4:20-cv-20, 2020 WL 6063063, at *3 (W.D. Va. Oct. 14, 2020) (noting that Rule 12(f) sets a "high burden . . . to justify striking" matter from a complaint and concluding that defendant's motion to strike allegations "hav[ing] some relation to the facts and claims in this case" did not meet that burden).

Moreover, persuasive case law indicates that, even if a federal regulation does not create a private cause of action, the regulation can be relevant to establishing the standard of care in common law negligence claims. For example, state courts in Virginia have held that OSHA regulations are relevant in determining the standard of care in negligence actions even though they do not create a private cause of action. *See, e.g.*, *Marslender*, 1995 WL 17049052, at *1 (collecting federal case law for the proposition that OSHA regulations do not create a private

cause of action, but are relevant to the "duty of care" in negligence actions under Virginia law). That holding is consistent with the Fourth Circuit's holding in *Albrecht v. Baltimore & Ohio R.R. Co.*, concluding that defendant's violation of OSHA regulations was admissible evidence of negligence under federal law. 808 F.2d at 332–33.

Accordingly, I find that reference to Medicare regulations may be relevant to the standard of care for negligence under Virginia common law. Cedars's motion to strike any references to Medicare regulations is therefore DENIED.

> B.   Ms. St. John's alleged Hoyer transfer injury and Cedars's alleged failure to use two-person assistance prior to September 17, 2022 are relevant to Milligan's request for punitive damages under Virginia Code § 8.01-50.

Cedars argues that "any allegations of negligence . . . prior to September 17, 2022" should be dismissed because they are "not causally related to Ms. St. John's death." Br. in Supp. 5–6. It therefore asks the Court to "strike any references to improper use of a Hoyer lift and Plaintiff's alleged injury on April 22, 2022." *Id.* at 6 (citing Compl. ¶¶ 16–43).

Milligan concedes that she is not asserting a claim based on Ms. St. John's Hoyer lift injury in April 2022. Milligan's Opp'n 5. However, she contends that the Hoyer lift injury and Cedars's failure to use two-person assistance are relevant to punitive damages because it shows "the repeated, willful pattern of failing to provide Ms. St. John with the care that [Cedars] knew was required." *Id.* at 5–6.

Whether Milligan's allegations are impertinent or immaterial depends in part on the nature of her asserted claim. Her claim for willful or wanton conduct, which allows for punitive damages, is a distinct tort from ordinary negligence and gross negligence. *See Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327–29 (Va. 1990). It is an "action taken in conscious disregard of another's rights, or with reckless indifference to consequences that the defendant is

aware, from his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to another." *Kaltman*, 706 S.E.2d at 871 (quoting *Alfonso v Robinson*, 514 S.E.2d 615, 618 (Va. 1999); *Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997)); *accord Paul v. W. Express Inc.*, No. 6:20-cv-51, 2021 WL 1259446, at *3–4 (W.D. Va. Apr. 6, 2021) (citing *Curtis v. Highfill*, 840 S.E.2d 321, 324 (Va. 2020)). "One way to show 'reckless indifference' is through '[e]vidence that a defendant had prior knowledge or notice that his actions or omissions would likely cause injury to others.'" *Hatcher v. Higgins Electric, Inc.*, 592 F. Supp. 3d 490, 491–92 (W.D. Va. 2022) (quoting *Alfonso*, 514 S.E.2d at 618). Moreover, "[a] claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." *Paul*, 2021 WL 1259446, at *3 (quoting *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003)).

Prior instances of similar conduct may be relevant to Milligan's claim for willful or wanton conduct and request for punitive damages. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (noting that "'the existence and frequency of similar past conduct'" is a factor "typically considered in assessing punitive damages") (quoting *Pacific Mut. Life. Ins. Co. v. Haslip*, 499 U.S. 1, 21–22 (1991)); *accord Huffman v. Love*, 427 S.E.2d 357, 359–60 (Va. 1993) (allowing a claim for punitive damages to reach the jury, noting that, among other factors, the defendant had two prior convictions for driving under the influence). Thus, Ms. St. John's severe injury during the April 2022 Hoyer transfer may be relevant to whether Cedars had notice that using only one staff member when providing care to Ms. St. John on September 17, 2022, was likely to cause injury. Accordingly, Ms. St. John's April 2022 injury and Cedars's use of the Hoyer lift are not immaterial or impertinent to Milligan's claim for willful or wanton

conduct claim or her request for punitive damages. *See Jones*, 2020 WL 6063063, at *3. Cedars's motion to strike those allegations is denied.

> C.   *Cedars has not met its burden of showing that the Medicare regulations or VDH investigations and findings are immaterial or impertinent.*

Cedars next argues that the Court should strike Milligan's allegations regarding Medicare regulations, and VDH investigations and findings. As discussed above in section III.A, the Medicare regulations are relevant to the standard of care.

As to the allegations regarding VDH's investigations and findings, Cedars argues that they are immaterial and scandalous because the investigation was after "Ms. St. John's death and thus after the tort occurred," and because the findings would "constitute hearsay and invade the province of the jury." Br. in Supp. 6–7. Cedars does not cite any case law to support this position. Accordingly, Cedars's motion to strike these allegations is denied. W.D. Va. Local Rule 11(c)(1) ("All motions . . . must be accompanied by a written brief setting forth a concise statement of facts and supporting reasons, along with a citation of the authorities upon which the movant relies."); *Smith v. Walmart, Inc.*, No. 7:22-cv-568, 2023 WL 5215376, at *4 n.2 (W.D. Va. Aug. 14, 2023) (declining to address argument not raised in brief because "perfunctory and undeveloped arguments . . . are waived") (citation omitted).

### IV. Conclusion & Order

For the foregoing reasons, Cedars' motion to dismiss and strike, ECF No. 7, is **DENIED**. It is so ORDERED.

ENTER: July 18, 2025

*/s/ Joel C. Hoppe*
Joel C. Hoppe
U.S. Magistrate Judge